IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. |
| | ) | 11-00263-01-CR-W-BCW |
| MARCO A. VERDUZCO-MORETT, | ) | |
| | ) | |
| Defendant. | ) | |

### **REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION TO RECONSIDER SUPPRESSION ORDER**

Before the court is Defendant's Motion to Reopen Suppression Hearing. Defendant moves the Court to reconsider its order denying his motion to suppress on grounds that information provided by the confidential informant was not reliable. For the following reasons, Defendant's request should be denied.

### *I.   BACKGROUND*

An indictment was returned on October 19, 2011, charging Defendant with, inter alia, one count of conspiracy to distribute and possess with the intent to distribute methamphetamine and one count of distributing and possessing with the intent to distribute methamphetamine. On October 2, 2012, Defendant filed a motion to suppress (Doc. No. 69). The government responded on October 22, 2012 (Doc. No. 73). An evidentiary hearing was held on November 1, 2012. I issued a Report and Recommendation on January 16, 2013, to deny Defendant's motion (Doc. No. 83).[1] In concluding there was probable cause to conduct a traffic stop of the vehicle in which Defendant was a passenger, the Report and Recommendation stated "Special

---

1 The Report and Recommendation was subsequently adopted by United States District Judge Brian C. Wimes (Doc. No 105).

1

Agent King had previously worked with the confidential informant, and he/she had proven reliable and truthful." (Doc. No. 83, p. 9).

On April 23, 2013, Defendant filed a motion to reopen the suppression hearing due to recently discovered information relevant to the credibility and reliability of the confidential informant (Doc. No. 91). The Government responded to Defendant's motion on April 30, 2013 (Doc. No. 94). I conducted an evidentiary hearing on July 17, 2013. The government appeared by Assistant United States Attorney Sydney Sanders. Defendant was present, represented by appointed counsel Bill Raymond. The government called the following witnesses to testify: (1) Jackson County Drug Task Force Detective Keegan Hughes; and (2) Homeland Security Investigations Special Agent Mark King. The following exhibits were admitted into evidence:

Government's Exhibit 8:	SEALED
Defendant's Exhibit 10:	Indictment – District of Kansas (12-20150-01-CM-DJW)

## II.  EVIDENCE

On the basis of the evidence presented at the supplemental suppression hearing, I submit the following findings of fact.

1. In 2010, Special Agent King brought the CI back to the United States from Mexico to work as an informant (Tr. at 47, 49). He did so because he had previously worked with the CI and found him/her to be a valuable informant (Tr. at 47). Special Agent King testified the "CI was probably one of the best informants I've ever worked with as far as providing information that resulted in positive results, and I knew [he/she] could get things done." (Tr. at 47).

2. Special Agent King deactivated the CI in 2011 after being notified by the

2

DEA that they suspected the CI might be involved in a drug conspiracy based on hearing his voice on a wiretap and observing the CI at a location from which drug proceeds were seized (Tr. at 10, 33, 64, 65-66). Special Agent King requested copies of the intercepted calls so he could determine whether the CI should remain an active informant for Homeland Security; the DEA never complied with this request (Tr. at 64, 66, 97). Out of an abundance of caution, the CI was deactivated on August 24, 2011, based on the information provided by the DEA (Tr. at 11, 33, 65, 68, 98).

3. Upon the CI's deactivation, Special Agent King granted the CI voluntary departure -- a process by which the CI was given three months to get things in order before leaving the United States (Tr. at 69, 99).

4. On September 26, 2011, the CI told Special Agent King he could set up Defendant (Tr. at 73). Because the CI had been deactivated by Homeland Security, Special Agent King contacted Detective Hughes to inquire whether the Jackson County Drug Force was interested in using the CI (Tr. at 73). He did so because such an activation could be done in a more timely manner (Tr. at 15-16, 34, 75). Special Agent King told Detective Hughes that Homeland Security had received derogatory information about the CI from the DEA; he did not tell Detective Hughes the date on which the intercepted calls took place (Tr. at 12, 17, 73).

5. At the time the CI was activated with the Jackson County Drug Task Force, Detective Hughes did not know if the DEA wiretap was specifically related to drug transactions (Tr. at 18). Moreover, he was unaware if the CI had been

observed at a location that was subsequently linked to a large cash drug proceeds seizure (Tr. at 18, 34).

6. Special Agent King was notified by the Kansas Bureau of Investigation on August 31, 2012, that the CI had been arrested and that they had searched his residence (Tr. at 87-88).

7. In September of 2012, the DEA activated the CI to work for them (Tr. at 103). The DEA could not locate any derogatory information regarding the intercepted telephone calls that prompted Special Agent King to deactivate the CI with Homeland Security back in 2011 (Tr. at 103).

8. When Detective Hughes testified at the November 1, 2012, suppression hearing, he was not aware if the CI was under investigation regarding methamphetamine distribution (Tr. at 19, 37). He similarly was unaware if a search warrant had been executed on the CI's home in August of 2012 (Tr. at 19, 20). Detective Hughes did not know if the CI had been arrested or was facing drug-related charges (Tr. at 20, 25).

9. Detective Hughes was aware that the CI was supposed to voluntarily leave the country at some point but did not do so (Tr. at 21-24).

10. When Special Agent King testified at the November 1, 2012, suppression hearing, he stated the CI did not have any legal issues (Tr. at 80). Special Agent King did not consider the CI's immigration parole status being revoked a "legal issue" (Tr. at 80-81). Additionally, he interpreted the question to pertain to the period of time when the CI had been deactivated by Homeland Security until the date he was activated by Detective Hughes (Tr. at 88-92, 94). Special Agent

King testified he was not trying to give misleading answers during the November 1, 2012 suppression hearing (Tr. at 101).

11.  On November 28, 2012 , the CI was indicted in the District of Kansas for conspiracy to possess with the intent to distribute methamphetamine and distribution of methamphetamine (Def. Exh. 10). The Indictment was unrelated to the derogatory information Special Agent King had received from the DEA (Tr. at 86, 102).

12.  AUSA Sanders informed Detective Hughes in April of 2013 that the CI had been arrested in Kansas (Tr. at 26, 38). Detective Hughes was also given this information by Special Agent King on May 15, 2013 (Tr. at 28). However, Detective Hughes first learned the specifics of the District of Kansas Indictment during the July 17, 2013, supplemental suppression hearing (Tr. at 37).

### III.  LEGAL ANALYSIS

Defendant maintains that probable cause for the September 26, 2011, traffic stop did not exist because "the confidential informant was actively involved in a methamphetamine distribution conspiracy at the exact time he was working with agents in this case. In order to work for officers as a confidential informant, the confidential informant was required to agree not to sell drugs and not be involved in any illegal activity. The confidential informant informed the officers that he was not currently involved in any illegal activity. However, the indictment [in the District of Kansas] suggests the confidential informant was not being truthful with agents in this case."  Defendant thus argues that officers should not have relied on the confidential informant.  I disagree.

"'The determination of whether probable cause existed is not to be made with the vision

of hindsight, but instead by looking to what the officer reasonably knew at the time,' and the same is true for reasonable suspicion." United States v. Sanchez, 572 F.3d 475, 478 (8th Cir. 2009)(quoting United States v. Sanders, 196 F.3d 910, 913 (8th Cir. 1999)). "The information from a confidential informant is sufficiently reliable if corroborated by other evidence, or if the confidential informant has a history of providing reliable information." United States v. Butler, 594 F.3d 955, 962 (8th Cir. 2010).

There is no evidence in this case to suggest that either Special Agent King or Detective Hughes knew of the confidential informant's involvement in methamphetamine distribution on September 26, 2011. Specifically, Special Agent King had previously worked with the CI and knew him/her to be a valuable informant who provided productive, actionable information. Upon receiving derogatory information from the DEA about the CI, Special Agent King requested copies of the intercepted telephone calls so he could make a determination as to whether the CI should remain active with Homeland Security. Special Agent King never received copies of the calls so the CI was activated out of an abundance of caution. When Detective Hughes activated the CI to work for the Jackson County Drug Task Force, he was aware Homeland Security had received derogatory information about the CI but did not know the specific nature of the alleged incident. The CI was not arrested in Kansas until August 31, 2012 -- nearly a year after he provided the Jackson County Drug Task Force information about Defendant, and was not indicted in the District of Kansas until November 1, 2012. Neither of these incidents could have possibly been known to either Special Agent King or Detective Hughes at the time the probable cause determination was made, as they had not yet occurred. Accordingly, Defendant's motion to reconsider should be denied.

## IV. CONCLUSION

For the above-stated reasons, it is

RECOMMENDED that the Court, after making an independent review of the record and the applicable law, enter an order denying in part Defendant's motion to reconsider the suppression order.

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has fourteen days from the date of this report and recommendation to file and serve specific objections to the same, unless an extension of time for good cause is obtained. Failure to file and serve timely specific objections may result in waiver of the right to appeal factual findings made in the report and recommendation which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

          */s/ Robert E. Larsen*
          ROBERT E. LARSEN
          United States Magistrate Judge

Kansas City, Missouri
November 4, 2013